NUMBER 13-02-624-CV

COURT OF APPEALS

THIRTEENTH DISTRICT OF TEXAS

CORPUS CHRISTI - EDINBURG
___________________________________________________________________

JAMES LAWRENCE WOOD, ET AL.,                                  Appellants,

v.

VICTORIA BANK & TRUST COMPANY, N.A., ET AL.,           Appellees.
___________________________________________________________________

On appeal from the 94th District Court
of Nueces County, Texas.
__________________________________________________________________

O P I N I O N

Before Chief Justice Valdez and Justices Rodriguez and Garza
Opinion by Justice Rodriguez

         Appellants, James Lawrence Wood, Charles Kaffie and James Barnette, brought
suit against appellees, Texas Commerce Bank, N.A. (TCB),


 Victoria Bank & Trust
Company, Victoria Bankshares, Inc., and Wells Fargo Bank Texas, N.A., alleging
various statutory and common law causes of action. Appellants’ claims arose from
a transaction in which TCB substituted its own subsidiary trust company as fiduciary
on certain accounts and subsequently sold the subsidiary to Victoria Bankshares. After
granting several motions for partial summary judgment in favor of appellees, the trial
court granted a final summary judgment dismissing all claims asserted by appellants. 
By nine issues, appellants challenge the trial court’s rulings. We affirm in part and
reverse and remand in part.
I. FACTUAL AND PROCEDURAL BACKGROUND
         The facts of this case are not in dispute. In 1993, TCB purchased Ameritrust,
a company which served as trustee for accounts in which appellants had an interest. 
After the purchase, Ameritrust was renamed Texas Commerce Trust Company and
later merged into TCB. As a result of the merger, TCB became the trustee of
appellants’ accounts thereby creating a fiduciary relationship with appellants. 
         Early in 1994, with the approval of bank regulatory authorities, TCB formed four
subsidiary trust companies, including Texas Commerce Trust Company–Corpus Christi
(TCTC-CC).


 On March 9, 1994, TCB entered into a fiduciary substitution agreement
with TCTC-CC


 for the purpose of substituting TCTC-CC as the fiduciary for all Corpus
Christi-related accounts, including appellants’ accounts. As required by statute, TCB
sent notice of the proposed substitutions to designated persons, including appellants. 
The notice advised that account holders had ninety days to object to the proposed
transfer. One beneficiary objected to the transfer of the account, and as a result that
beneficiary’s account was not transferred. The remaining accounts were transferred
to TCTC-CC on June 10, 1994.
         On March 11, 1994, TCB entered into an agreement to sell the stock of TCTC-CC to Victoria Bankshares for $8.75 million.


 TCB sent notice of the proposed sale
to each account holder and beneficiary, including appellants, on March 28, 1994. 
Following regulatory approval from federal and state authorities, the stock sale was
completed on June 30, 1994. In conjunction with the sale of stock to Victoria
Bankshares, TCTC-CC merged with Victoria Bank & Trust, a subsidiary of Victoria
Bankshares.



         After the sale to Victoria Bankshares and merger with Victoria Bank & Trust,
appellants filed suit claiming that the transfer and sale of fiduciary appointments by
TCB was fraudulent and illegal. Appellants charged that the actions of TCB violated
the law of trusts, deceptive trade practice laws, breached fiduciary duties, and
constituted conversion of trust property. Appellants further argued that the Substitute
Fiduciary Act did not authorize the transfer of fiduciary accounts to a subsidiary trust
company for the purpose of selling that trust company to a third party.
         Subsequently, the trial court granted a series of motions for partial summary
judgment and a final summary judgment in favor of appellees. Appellees’ first motion
for partial summary judgment was granted on November 25, 1997 with the trial court
ruling that the Substitute Fiduciary Act permitted TCB to form a subsidiary trust
company and transfer fiduciary accounts to that subsidiary. On July 20, 1998, the
court granted appellees’ second motion for partial summary judgment finding that the
statutorily required Irrevocable Undertaking filed by Texas Commerce Equity Holdings,
Inc. complied with the Substitute Fiduciary Act. On May 31, 2000, the trial court
granted appellees’ third motion for partial summary judgment, finding that TCB’s
actions did not breach the common law fiduciary duties of loyalty, faithful
administration of trust accounts, and full disclosure. On June 26, 2002, the trial court
granted appellees’ fourth motion for partial summary judgment, finding that the notice
provided by TCB of the proposed transfer of fiduciary accounts satisfied all the
requirements of the Substitute Fiduciary Act. On October 23, 2002, the trial court
granted a final summary judgment in favor of appellees, disposing of all parties and all
claims in the case. Appellants challenge all summary judgments on appeal.
II. STANDARD OF REVIEW
         We review de novo a trial court’s grant or denial of a traditional motion for
summary judgment. See Natividad v. Alexsis, Inc., 875 S.W.2d 695, 699 (Tex.
1994); Alaniz v. Hoyt, 105 S.W.3d 330, 345 (Tex. App.–Corpus Christi 2003, no
pet.). To prevail, the moving party bears the burden of showing that there is no
genuine issue of material fact and that he is entitled to judgment as a matter of law. 
Tex. R. Civ. P. 166a(c); Lear Siegler, Inc. v. Perez, 819 S.W.2d 470, 471 (Tex. 1991). 
In deciding whether there is a genuine issue of material fact, evidence favorable to the
non-movant will be taken as true, and all reasonable inferences made and all doubts
resolved in the non-movant's favor. Am. Tobacco Co. v. Grinnell, 951 S.W.2d 420,
425 (Tex. 1997).III. ANALYSIS
         Appellants raise nine issues on appeal challenging TCB’s transfer of fiduciary
accounts to TCTC-CC and the subsequent sale to Victoria Bankshares. As a threshold
matter, we will address appellants’ fourth issue and determine whether, under the
facts of this case, the Substitute Fiduciary Act could be utilized to transfer the
fiduciary accounts to TCTC-CC.
A. Substitute Fiduciary Act
         By their fourth issue, appellants argue that TCB improperly and illegally invoked
the Substitute Fiduciary Act to transfer fiduciary appointments to its subsidiary
because the Act only allows bank holding companies to “consolidate” their trust
functions into a separate trust subsidiary. Appellants assert that the statute was used
by appellees in this transaction to “de-consolidate” the fiduciary appointments from
TCB to its four subsidiary trust companies, and therefore the transfer is illegal and
void. In support of their argument appellants cite the language of the statute, case
law interpreting the statute, and the legislative history. Appellees respond by arguing: 
(1) neither the language of the statute nor the legislative history prohibits a
“decentralizing” transfer; (2) the language of the statute is clear and unambiguous and
therefore legislative history should not be used to change the statute’s meaning; and
(3) the transaction nonetheless satisfies the purpose of the statute.
         The Substitute Fiduciary Act provides, in relevant part:
(a) A subsidiary trust company and one or more of its affiliated
banks may enter into one or more agreements under which the subsidiary
trust company is substituted as fiduciary for each affiliated bank in each
fiduciary account listed in the agreement. The agreement shall be filed
with the banking commissioner before the effective date of the
substitution . . . . 

* * * *
(g) On the effective date the subsidiary trust company succeeds
to all right, title, and interest in all property that the affiliated bank holds
as fiduciary, except property held for accounts for which there has been
no substitution under this Act, without the necessity of any instrument
of transfer or conveyance, and the subsidiary trust company shall,
without the necessity of any judicial action or action by the creator of the
fiduciary account, become fiduciary and perform all the duties and
obligations and exercise all the powers and authority connected with or
incidental to that fiduciary capacity . . . .

Substitute Fiduciary Act, 70th Leg., R.S., ch. 207, § 2, 1987 Tex. Gen. Laws 1487,
repealed by Act of May 24, 1997, 75th Leg., R.S., ch. 1008, § 6(a), 1997 Tex. Gen.
Laws 3091, 3602.  
         This Court’s ultimate goal in construing a statute is to give effect to the
legislature’s intent as expressed in the language of the statute. See Crimmins v.
Lowry, 691 S.W.2d 582, 584 (Tex. 1985). The Substitute Fiduciary Act does not
expressly address whether consolidation is a requirement when transferring fiduciary
accounts. The statute only provides that “a subsidiary trust company and one or more
of its affiliated banks may enter into one or more agreements under which the
subsidiary trust company is substituted as fiduciary. . . .” From this language alone,
we cannot conclude that the legislature intended to require the fiduciary substitution
to result in a consolidation when utilizing the statute. To the contrary, the failure to
include any language requiring consolidation indicates that the legislature did not intend
such a requirement. See Cameron v. Terrell & Garrett, Inc., 618 S.W.2d 535, 540
(Tex. 1981) (stating that if the legislature had intended to include a restriction it could
easily have done so by simply drafting the restriction into a provision of the act);
Allison v. Allison, 3 S.W.3d 211, 214 (Tex. App.–Corpus Christi 1999, no pet.)
(“[H]ad the Legislature intended to include visitation within the exception to Texas's
continuing jurisdiction . . . it would have included the word visitation.”). Because the
plain language of the Substitute Fiduciary Act does not require consolidation, we
presume the legislature did not intend to include such a requirement in the Act. 
Therefore, we find that any transfer of fiduciary accounts between a bank and its
subsidiary meeting the requirements of the statute is allowed regardless of whether
the transfer results in a consolidation or de-consolidation of accounts.
         Moreover, our review of case law and the Act’s legislative history reveals that
neither specifically addresses whether the statute is to be used solely for the purpose
of consolidating fiduciary accounts. See Bank One, N.A. v. Ameritrust Tex., N.A., 858
S.W.2d 516 (Tex. App.–Dallas 1993, writ denied); In re Estate of Touring, 775
S.W.2d 39 (Tex. App.–Houston [14th Dist.] 1989, no writ). Appellants argue that the
purpose of the Act, as clearly stated in In re Touring, is to “promote efficient and cost-effective delivery of fiduciary services by allowing the placement of these services
within a single corporate entity which maintains offices throughout the State of
Texas.” See In re Estate of Touring, 775 S.W.2d at 42. Appellants also argue that
the legislative history makes clear that the purpose of the statute is to consolidate
fiduciary services. However, in reviewing the house and senate committee
discussions, the driving force behind the Act appears to have been the promotion of
efficient and cost-effective delivery of fiduciary services to enable the continuance of
local trust services and to provide trust services to communities in which they were
not economically feasible before. The centralization of fiduciary accounts into a single
corporate entity, as stated in In re Estate of Touring, was simply a method by which
the legislature contemplated the purpose being achieved. See id. Moreover, we have
found no discussions regarding the legislature’s intent to specifically limit the transfers
to consolidations only. Because we find no clear legislative intent that there be a
restriction or limitation on transfers under the statute and no restriction was expressly
stated in the statute, we decline appellants’ invitation to create one. See Jones v.
Liberty Mut. Ins. Co., 745 S.W.2d 901, 901 (Tex. 1988) (“A court may not judicially
amend a statute and add words that are not implicitly contained in the language of the
statute.”); Cameron, 618 S.W.2d at 540 (explaining that additional words or
requirements can be inserted into a statute only when necessary to give effect to clear
legislative intent).
          As neither the language of the statute, case law, nor the legislative history
explicitly limits the use of the Substitute Fiduciary Act for consolidation purposes only,
we conclude the Act provided statutory authority for TCB to substitute TCTC-CC as
fiduciary on the trust accounts. Appellants’ fourth issue is overruled.
B. Irrevocable Undertaking
         In issues seven and eight, appellants argue that the irrevocable undertaking filed
by Texas Commerce Equity Holdings, Inc.,


 failed to comply with the Substitute
Fiduciary Act. Section 7(a) of the Act states that “the subsidiary trust company’s
owning bank holding company shall file with the banking commissioner an irrevocable
undertaking to be fully responsible for the existing and future acts and omissions of
its subsidiary trust company.” Substitute Fiduciary Act, 70th Leg., R.S., ch. 207, §
7, 1987 Tex. Gen. Laws 1487 (repealed 1997).     Appellants assert that the
undertaking was insufficient because: (1) it was limited to future acts of the trust
subsidiary “for so long as the Subsidiary Trust Company is owned, directly or
indirectly, by [Texas Commerce Equity Holdings, Inc.]”; and (2) Texas Commerce
Equity Holdings, Inc. was not a proper legal entity to execute and file the irrevocable
undertaking.
         After reviewing the irrevocable undertaking filed by Texas Commerce Equity
Holdings, Inc., we find that it satisfies the statutory requirements. The statute only
requires that a bank holding company be fully responsible for the existing and future
fiduciary acts and omissions of its subsidiary trust company. See id. An undertaking
stating that the bank holding company will be responsible only for so long as the
subsidiary is owned by the holding company is no less irrevocable and fulfills the
obligation stated in the statute. Moreover, we find Texas Commerce Equity Holdings,
Inc. to be an owning bank holding company as defined under the Bank Holding
Company Act,


 and it is therefore an appropriate entity to file the irrevocable
undertaking. Appellants’ seventh and eighth issues are overruled.
C. Constitutionality of the Act
         By their ninth issue, appellants argue that the Substitute Fiduciary Act, as
construed by the trial court, is unconstitutional. Appellants assert that the trial court
construed the Act to allow fiduciary accounts to be transferred to a third party for
consideration without notice and regardless of the contractual arrangement between
the fiduciary and the settlor or beneficiaries of the trust. Appellants contend we must
determine the constitutionality of the Act in light of this interpretation by the trial
court. We disagree.
         Appellants misinterpret the trial court’s findings regarding the scope of the Act. 
The trial court in this case ruled that the Substitute Fiduciary Act permitted TCB to
form a subsidiary trust company and transfer fiduciary accounts to that subsidiary. 
The court did not construe the Act to allow fiduciary accounts to be transferred to a
third party as appellant contends. The transfer of accounts to a third party, which
took place in this case, was made pursuant to Texas Revised Civil Statute article 342-305, a separate statute. See Act of March 23, 1943, 48th Leg., R.S., ch. 97, subch.
III, art. 8, 1943 Tex. Gen. Laws 128,140, amended by Acts 1993, 73rd Leg., R.S.,
ch. 765, § 3, 1993 Tex. Gen. Laws 2972, 2976, and ch. 944, § 2, 1993 Tex. Gen.
Laws 4043 (now codified at Tex. Fin. Code Ann. § 59.004 (Vernon Supp. 2004-2005)). Therefore, the constitutionality of the Substitute Fiduciary Act as a statute
allowing the transfer of accounts to a third party need not be addressed. Appellants’
ninth issue is overruled.
D. Transfer of Fiduciary Appointments for Consideration
         By their fifth issue, appellants argue that under established trust law, a trustee
can never resign or transfer his office for monetary consideration, and where a trustee
has transferred his fiduciary appointment in exchange for valuable consideration such
transfer is void and the consideration should be disgorged and made part of the trust
estate. See Sugden v. Crossland, 3 Sm. & Gif. 192, 65 Eng. Rep. 620 (1856);
Rosenfeld v. Black, 445 F.2d 1337 (2d. Cir. 1971); Field v. Western Life Indemnity
Co., 166 F. 607, 610 (N.D. Ill. 1908); Lednum v. Dallas Trust & Savings Bank, 192
S.W. 1127, 1128 (Tex. Civ. App.–Dallas 1917, writ ref’d). 
         Appellees contend that the authorities relied on by appellants are outdated and
do not take into account the evolution of the law relating to corporate fiduciaries. 
Moreover, appellees argue that none of the cases cited involved statutes authorizing
a transfer of fiduciary appointments in exchange for consideration. We agree.
         In this case, the transfer of fiduciary appointments upon the sale and merger of
TCTC-CC into Victoria Bank & Trust was made pursuant to Texas Revised Civil Statute
article 342-305 which provides:
[I]f any merging institution shall at the time of the merger be acting as
trustee, guardian, executor, administrator, or in any other fiduciary
capacity, the resulting bank shall, without the necessity of any judicial
action or action by the creator of such trust, continue such office, trust
or fiduciary relationship and shall perform all of the duties and obligations
and exercise all of the powers and authority connected with or incidental
to such fiduciary relationship in the same manner as though the resulting
bank had been originally named or designated as such fiduciary.

Act of March 23, 1943, 48th Leg., R.S., ch. 97, subch. III, art. 8, 1943 Tex. Gen.
Laws 128,140 (amended 1993). Article 342-305 expressly authorized Victoria Bank
& Trust, after the merger, to succeed to any fiduciary offices held by TCTC-CC. As
a result, the fiduciary appointments were effectively transferred during the merger; a
merger which resulted from the exchange of consideration for the stock of TCTC-CC. 
See id. It is this transfer which appellants argue violates the common law prohibition
against the sale of a fiduciary office for profit. However, reading the statute in the
context in which it was applied indicates that the legislature contemplated and
implicitly acknowledged that a bank would receive consideration in exchange, in part,
for the transfer of fiduciary appointments. See id. To this extent, the statute can be
interpreted as allowing the transfer of a fiduciary office in exchange for consideration.
See id. Accordingly, we find under the facts of this case that the common law was
modified by statute, article 342-305, to permit the transfer of fiduciary appointments
for consideration.


 Appellants’ fifth issue is overruled.
E. Breach of Fiduciary Duty of Loyalty
         By their first, second and sixth issues, appellants argue that the fiduciary
appointments held by TCB were subject to fiduciary duties which were breached. 
Specifically, appellants assert that by transferring the fiduciary accounts to its
subsidiary and then selling the subsidiary to a third party, TCB breached the common
law fiduciary duties of loyalty, which included refraining from self-dealing, faithful
administration of trust accounts, and the duty of full disclosure. Appellees do not
dispute that the fiduciary appointments held by TCB were subject to fiduciary duties. 
They argue, however, that no duties were breached as a matter of law.As a general rule, a trustee has a duty of loyalty which prohibits using to his
advantage his position to gain any benefit for himself at the expense of the
beneficiaries and from placing himself in any position where his self interest will or
may conflict with his obligations as trustee. Slay v. Burnett Trust, 187 S.W.2d 377,
387-88 (Tex. 1945). The trustee holds a duty of loyalty to the beneficiaries to
administer the affairs of the trust in the interest of the beneficiaries alone and to
exclude from consideration its own advantage. InterFirst Bank Dallas, N.A. v. Risser,
739 S.W.2d 882, 889 (Tex. App.–Texarkana 1987, no pet.).
         Appellees assert that TCB did not breach its duty of loyalty as a matter of law
because TCB accomplished the substitution and sale of the fiduciary accounts by
utilizing statutes which authorized these transactions. Appellees cite to the Substitute
Fiduciary Act as authorizing the transfer of accounts to TCTC-CC and refer to Texas
Revised Civil Statute article 342-305 as authorizing the sale of TCTC-CC.
         We agree that the Substitute Fiduciary Act authorized the transfer of accounts
to TCTC-CC, as discussed earlier. See Substitute Fiduciary Act, 70th Leg., R.S., ch.
207, § 2, 1987 Tex. Gen. Laws 1487 (repealed 1997). We also agree that article
342-305 provides for the automatic transfer of fiduciary appointments upon the
successful merger of two institutions. See Act of March 23, 1943, 48th Leg., R.S.,
ch. 97, subch. III, art. 8, 1943 Tex. Gen. Laws 128,140 (amended 1993). However,
we do not agree with appellees that there was no breach as a matter of law simply
because the sale and transfer of fiduciary accounts were made pursuant to these
statutes. Appellees provide no authority for this contention. While the Fiduciary
Substitution Act and article 342-305 provide statutory authority for the transaction
between TCB and Victoria Bankshares, neither statute contains a provision which
would preclude or preempt a common law cause of action for breach of fiduciary duty. 
Contra Tex. Bus. Corp. Act Ann. art. 2.21, § B (Vernon 2003) (providing that liability
under article is exclusive and preempts any other liability imposed under common law);
Tex. Bus. & Com. Code Ann. § 15.52 (Vernon 2002) (stating that procedures and
remedies provided by section 15.51 of code are exclusive and preempt any procedures
or remedies under common law). Therefore, we cannot conclude that there was no
breach as a matter of law simply because appellants complied with the statutes
enabling the transaction. After reviewing the expert affidavits attached by appellants
as summary judgment evidence,


 we conclude that a genuine issue of material fact
remains as to TCB’s breach of its duty of loyalty.a. Refraining from Self-Dealing
         A trustee has the duty to refrain from self-dealing. See InterFirst Bank Dallas,
739 S.W.2d at 898. Appellants argue that the transaction constituted self-dealing
because TCB profited from the sale of trust property. Appellees contend that the
actions of TCB did not constitute self-dealing as a matter of law because the fiduciary
appointments which were sold are assets of the bank and are not property of the
trusts or the beneficiaries. However, even if we did agree with appellees that the
fiduciary appointments were assets of the bank, see NCNB Tex. Nat’l Bank v. Cowden,
895 F.2d 1488 (5th Cir. 1990) (finding that fiduciary appointments were assets of the
bank within meaning of federal bridge statute), this would not preclude TCB’s actions
from being considered self-dealing as a matter of law. The definition of self-dealing
is broader than simply profiting from the sale of trust assets. Self-dealing
encompasses any conduct by the trustee which gives the trustee an advantage to the
detriment of the trust or the beneficiaries. See InterFirst Bank Dallas, 739 S.W.2d at
898. Under this broad definition of self-dealing, whether the fiduciary appointments
are categorized as assets of the bank or the trust account is not dispositive. If TCB
is found to have taken advantage of its position as trustee to the detriment of the trust
it would have engaged in self-dealing. See id. We therefore conclude a question of
fact has been raised as to this issue.
b. Faithful Administration of Trust Accounts
         As part of their claim for breach of fiduciary duty, appellants allege that TCB
breached its duty to faithfully administer the trusts by failing to employ independent
legal counsel to represent the fiduciary accounts and the beneficiaries. Appellees
argue that appellants fail to cite any case law in support of their argument that TCB
had a duty to hire independent legal counsel in this situation, and therefore this claim
was properly dismissed. 
         Texas recognizes a general duty of administration of trust accounts. See Tex.
Prop. Code Ann. § 113.051 (Vernon 1995). In the absence of any contrary terms in
the trust instrument or in the Texas Trust Code, the trustee must, in administering the
trust, perform all of the duties imposed on trustees by the common law. See id. The
duties and responsibilities prescribed under the trust code do not exclude other implied
duties or responsibilities that are not inconsistent with the trust code. See id. §
113.024. In this case, appellants have offered summary judgment evidence in the
form of expert affidavits stating that under these circumstances the duty of
administration would include the duty to hire independent legal counsel to represent
the fiduciary accounts and the beneficiaries. We find an issue of fact as to breach of
this duty has been raised.
c. Duty of Full Disclosure
         As trustee to accounts to which appellants were beneficiaries, TCB owed
appellants a fiduciary duty of full disclosure of all material facts known to them that
might affect appellants’ rights. See Montgomery v. Kennedy, 669 S.W.2d 309, 313
(Tex. 1984). Appellants argue that TCB breached this duty by failing to disclose
information regarding the purpose for which TCB was transferring the fiduciary
accounts to its subsidiary, its conflict of interest, and its financial interest in the
transaction. 
         Appellees contend there was no breach as a matter of law because TCB
provided full and complete disclosure of all material facts required under the Substitute
Fiduciary Act. However, as we concluded earlier, simply complying with the statutory
requirements in executing the transaction does not immunize a fiduciary from breach
of its fiduciary duty as a matter of law. As fiduciary to the accounts, TCB was still
burdened with the duty of full disclosure under common law even though it disclosed
all information required under the Act. We find appellants provided sufficient evidence
to raise a fact issue as to TCB’s breach of its duty of full disclosure.
         Accordingly, appellants’ first, second and sixth issues are sustained. 
 
F. Appellants’ Remaining Claims
         By their third issue, appellants challenge the trial court’s final summary judgment
which disposed of appellants’ negligence, fraud, DTPA, conversion and civil conspiracy
claims against appellees. However, appellants’ brief contains no argument supported
by citations to authority and the record as to why the trial court erred in dismissing
these claims. Therefore, appellants have waived any error regarding this issue. See
Tex. R. App. P. 38.1(h); Columbia Rio Grande Reg'l Hosp. v. Stover, 17 S.W.3d 387,
392 (Tex. App.–Corpus Christi 2000, no pet.) (stating that issues not supported by
argument and authority are deemed waived). Appellants’ third issue is overruled.
IV. CONCLUSION
         Having sustained appellants’ first, second and sixth issues, we reverse, in part,
the trial court’s summary judgment dismissing appellants’ breach of fiduciary duty
claims. We remand those claims to the trial court for proceedings consistent with this
opinion. We affirm the trial court’s summary judgment dismissing all other claims by
appellants.                                                                            
                                                                        NELDA V. RODRIGUEZ
                                                                        Justice

Opinion delivered and filed this
10th day of February, 2005.